STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259
     Facsimile: (213) 894-0141
     E-mail:    alexander.schwab@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-155-FMO |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT JOHN A. SANTILLI JR. |
| v. | |
| JOHN A. SANTILLI JR., | |
| Defendant. | |

1.    This constitutes the plea agreement between JOHN A. SANTILLI JR. ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one and three of the indictment in United States v. John A. Santilli Jr., CR

No. CR 21-155-FMO, which charge defendant with securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, and wire fraud, in violation of 18 U.S.C. § 1343.

        b.   Not contest facts agreed to in this agreement.

        c.   Abide by all agreements regarding sentencing contained in this agreement.

        d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by General Order 20-097 or another order, rule, or statute.  Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

           i.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

           ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial

3

Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

k.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

l.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to USSG § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSES</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, the

following must be true: (1) defendant willfully used a device or scheme to defraud someone, made an untrue statement of a material fact, failed to disclose a material fact that resulted in making the defendant's statements misleading, or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person; (2) defendant's acts were undertaken, statement was made, or failure to disclose was done in connection with the in connection with the purchase and sale of securities; (3) defendant directly or indirectly used wire communications in connection with these acts, making this statement, or this failure to disclose; and (4) defendant acted knowingly.

    5.    Defendant understands that for defendant to be guilty of the crime charged in count three, that is, wire fraud, in violation of 18 U.S.C. § 1343, the following must be true: (1) defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts (deceitful statements of half-truths may constitute false or fraudulent representations); (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

1

PENALTIES AND RESTITUTION

2       6.   Defendant understands that the statutory maximum sentence

3  that the Court can impose for a violation of 15 U.S.C. §§ 78j(b),

4  78ff and 17 C.F.R. § 240.10b-5, is: twenty years of imprisonment; a

5  three-year period of supervised release; a fine of $5 million or

6  twice the gross gain or gross loss resulting from the offense,

7  whichever is greatest; and a mandatory special assessment of $100.

8       7.   Defendant understands that the statutory maximum sentence

9  that the Court can impose for a violation of 18 U.S.C. § 1343, is:

10  twenty years of imprisonment; a three-year period of supervised

11  release; a fine of $250,000 or twice the gross gain or gross loss

12  resulting from the offense, whichever is greatest; and a mandatory

13  special assessment of $100.

14      8.   Defendant understands, therefore, that the total maximum

15  sentence for all offenses to which defendant is pleading guilty is:

16  forty years' imprisonment; a three-year period of supervised release;

17  a fine of $5,250,000 or twice the gross gain or gross loss resulting

18  from the offenses, whichever is greatest; and a mandatory special

19  assessment of $200.

20      9.   Defendant understands that defendant will be required to

21  pay full restitution to the victims of the offenses to which

22  defendant is pleading guilty.  Defendant agrees that, in return for

23  the USAO's compliance with its obligations under this agreement, the

24  Court may order restitution to persons other than the victims of the

25  offenses to which defendant is pleading guilty and in amounts greater

26  than those alleged in the counts to which defendant is pleading

27  guilty.  In particular, defendant agrees that the Court may order

28  restitution to any victim of any of the following for any losses

6

suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $4,258,680 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.  The parties recognize and agree that payments defendant has already made to victims may be credited against the amount of restitution owed and the restitution ordered at sentencing should be offset by any principal payments defendant has made to the victim prior to sentencing.  Any credit of payment is subject to the approval of the Clerk's Office or, if not approved, the Court. Defendant understands that he is responsible for ensuring sufficient documentation establishing entitlement to any payment credit is provided to the USAO Financial Litigation Section by email to usacac.FinLit@usdoj.gov.

10.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty

1  regardless of any immigration consequences that his pleas may entail,
2  even if the consequence is automatic removal from the United States.

3                              FACTUAL BASIS

4        13.  Defendant admits that defendant is, in fact, guilty of the
5  offenses to which defendant is agreeing to plead guilty.  Defendant
6  and the USAO agree to the statement of facts provided below and agree
7  that this statement of facts is sufficient to support pleas of guilty
8  to the charges described in this agreement and to establish the
9  Sentencing Guidelines factors set forth in paragraph 16 below but is
10 not meant to be a complete recitation of all facts relevant to the
11 underlying criminal conduct or all facts known to either party that
12 relate to that conduct.

13       Mike's Mobile Detailing, LLC ("Mike's Mobile Detailing") is a
14 Delaware limited liability company that operates "Magic Mike Live," a
15 live revue stage show at the Hard Rock Hotel and Casino in Las Vegas,
16 Nevada, based on the films Magic Mike and Magic Mike XXL, which
17 provide fictional accounts of life as a male stripper.  As a limited
18 liability company, Mike's Mobile Detailing issued Class A Units to
19 its members, with the Class A Units constituting "securities" within
20 the meaning of the Securities Exchange Act of 1934.  One such member
21 of Mike's Mobile Detailing was Aloris Entertainment, LLC ("Aloris
22 1"), a Rhode Island limited liability company partly owned and
23 managed by defendant.  Aloris 1 became a member of Mike's Mobile
24 Detailing after entering into an August 2, 2016, Limited Liability
25 Company Agreement (the "August 2016 LLC Agreement"), which defendant
26 signed as Aloris 1's owner.  As a member, Aloris 1 acquired 1,875,000
27 Class A Units of Mike's Mobile Detailing.  The August 2016 LLC
28 Agreement provided, among other things, that "no Member may directly

                                    9

1  or indirectly Transfer all or any part of such Member's Units or,
2  with respect to [Aloris 1], the membership interests in [Aloris 1]
3  (including any right to receive distributions or allocations in
4  respect of such Interests) . . . without the prior written consent of
5  the majority of the disinterested Managers on the Board."

6      In addition to Aloris 1, defendant was manager and general
7  partner of Aloris Magic Mike LP ("Aloris 2"), a Delaware limited
8  partnership.  Aloris 2 held no interest in Mike's Mobile Detailing,
9  LLC.

10     Beginning on a date unknown, but no later than in or about June
11 2016, and continuing through at least in or about February 2020, in
12 Los Angeles County, within the Central District of California, and
13 elsewhere, defendant, knowingly and willfully, directly and
14 indirectly, by the use of the means and instrumentalities of
15 interstate commerce and the mails, in connection with the purchase
16 and sale of Mike's Mobile Detailing securities, Aloris 1 securities,
17 and Aloris 2 securities, used and employed manipulative and deceptive
18 devices and contrivances, by: (1) employing a scheme to defraud;
19 (2) making untrue statements of material facts and omitting to state
20 material facts necessary in order to make the statements made, in
21 light of the circumstances under which they were made, not
22 misleading; and (3) engaging in acts, practices, and courses of
23 business which operated and would operate as a fraud and deceit upon
24 purchasers and prospective purchasers of Mike's Mobile Detailing
25 securities, Aloris 1 securities, and Aloris 2 securities (the
26 "victims"), by causing materially false and fraudulent statements and
27 material omissions to be made to the victims about defendant's
28 ability and authority to sell the securities to the victims.  During

the same time period, defendant, knowingly and with the intent to defraud, also knowingly devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts. The schemes operated in the following manner:

Defendant offered victims investment contracts that constituted "securities" under the Securities Exchange Act of 1934. These investment contracts purported to sell victims an ownership interest in either Aloris 1 or Aloris 2 -- though typically Aloris 2 -- with defendant representing that these ownership interests corresponded to a specific number of Mike's Mobile Detailing Class A Units held by Aloris 1 or Aloris 2. The investment contracts also provided the victims the right to a percentage of the distributions that would be paid to the holders of the Class A Units.

Defendant made false representations to his victims with regard to Aloris 1 and Aloris 2. As to Aloris 1, defendant falsely represented to victims that Aloris 2 owned Class A Units even though defendant knew Aloris 2 had no such ownership interest. In furtherance of the scheme and in order to persuade the victims that Aloris 2 owned Class A Units, defendant modified the August 2016 LLC Agreement to make it falsely describe Aloris 2 as a member of Mike's Mobile Detailing when, in fact, as defendant then knew, Aloris 2 was not a member in Mike's Mobile Detailing. In fabricating this version of the August 2016 LLC Agreement, he used the means of identification of real people -- specifically, the names and signatures of two actual signatories to the August 2016 LLC Agreement. He attached this doctored version of the agreement to an email he sent to one of

his victims by means of interstate wire communication on September 17, 2016.

As to Aloris 1, defendant falsely represented that he had the authority to sell an ownership interest in Aloris 1 even though, in fact, as he then knew, he did not. Aloris 1 was prohibited from selling the Class A Units, a membership interest in Aloris 1, or the right to receive distributions based on that membership interest without the written consent of the majority of the Board of Mike's Mobile Detailing. Defendant never sought or obtained such consent.

In addition to falsely representing that he had authority to sell the interests in the Class A Units, defendant sold interests corresponding to nearly twice the number of Class A Units Aloris 1 actually possessed. In soliciting investors, defendant represented to them that the interests he was selling in his entities corresponded to a particular number of Class A Units. Though neither defendant nor his entities ever held more than 1,875,000 Class A Units, he sold his victims shares in his entities that, taken together, he represented to correspond to over 3,500,000 Class A Units.

As part of Aloris 1's acquisition of 1,875,000 Class A Units, it was obligated to pay various installments of its $1,875,000 investment by certain dates. But because defendant spent a significant portion of the victims' investments on personal expenses before making all of these installment payments, defendant solicited additional investments from victims under the false pretense that additional Class A Units and ownership interests in Aloris 2 had become available for purchase when, in fact, he used these funds to complete Aloris 1's original purchase of the 1,875,000 Class Units.

Defendant also used a significant portion of the victims' funds for purposes unrelated to investments in Mike's Mobile Detailing, including the withdrawal of more than $1 million in victim funds at various casinos across the United States, where he used the money to gamble.

To maintain the scheme and to avoid its detection, defendant falsely represented to one victim, who had voiced concerns about defendant's lack of financial transparency, that defendant would repay the principal on a $375,000 investment that the victim had made.  Defendant then mailed that victim two cashiers' checks.  After mailing those checks to the victim, defendant caused Citibank, which had issued those cashiers' checks, to cancel payment by submitting, on March 27, 2018, a "Stop Payment Request and Indemnity Agreement." In the forms, defendant falsely represented to Citibank that the cashiers' checks had been lost.

As a result of the scheme to defraud, defendant caused approximately $4,258,679.64 in losses to his victims.

SENTENCING FACTORS

14.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crimes of conviction.

15.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level | 7 | | [USSG § 2B1.1(a)(1)] |
| Loss > $3.5 million | +18 | | [USSG § 2B1.1(b)(1)(J)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

          a.   The right to persist in a plea of not guilty.

          b.   The right to a speedy and public trial by jury.

          c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

          d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

1          e.    The right to confront and cross-examine witnesses

2     against defendant.

3          f.    The right to testify and to present evidence in

4     opposition to the charges, including the right to compel the

5     attendance of witnesses to testify.

6          g.    The right not to be compelled to testify, and, if

7     defendant chose not to testify or present evidence, to have that

8     choice not be used against defendant.

9          h.    Any and all rights to pursue any affirmative defenses,

10    Fourth Amendment or Fifth Amendment claims, and other pretrial

11    motions that have been filed or could be filed.

12                 <u>WAIVER OF APPEAL OF CONVICTION</u>

13         19.   Defendant understands that, with the exception of an appeal

14    based on a claim that defendant's guilty pleas were involuntary, by

15    pleading guilty defendant is waiving and giving up any right to

16    appeal defendant's convictions on the offenses to which defendant is

17    pleading guilty.  Defendant understands that this waiver includes,

18    but is not limited to, arguments that the statutes to which defendant

19    is pleading guilty are unconstitutional, and any and all claims that

20    the statement of facts provided herein is insufficient to support

21    defendant's pleas of guilty.

22            <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

23         20.   Defendant gives up the right to appeal all of the

24    following: (a) the procedures and calculations used to determine and

25    impose any portion of the sentence; (b) the term of imprisonment

26    imposed by the Court, provided it is within the statutory maximum;

27    (c) the fine imposed by the Court, provided it is within the

28    statutory maximum; (d) to the extent permitted by law, the

15

constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

22.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 78 months' imprisonment, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $4,258,679.64.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

23. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

24. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

1

EFFECTIVE DATE OF AGREEMENT

2   25.   This agreement is effective upon signature and execution of

3   all required certifications by defendant, defendant's counsel, and an

4   Assistant United States Attorney.

5

BREACH OF AGREEMENT

6   26.   Defendant agrees that if defendant, at any time after the

7   effective date of this agreement, knowingly violates or fails to

8   perform any of defendant's obligations under this agreement ("a

9   breach"), the USAO may declare this agreement breached.  All of

10  defendant's obligations are material, a single breach of this

11  agreement is sufficient for the USAO to declare a breach, and

12  defendant shall not be deemed to have cured a breach without the

13  express agreement of the USAO in writing.  If the USAO declares this

14  agreement breached, and the Court finds such a breach to have

15  occurred, then: (a) if defendant has previously entered guilty pleas

16  pursuant to this agreement, defendant will not be able to withdraw

17  the guilty pleas, and (b) the USAO will be relieved of all its

18  obligations under this agreement.

19  27.   Following the Court's finding of a knowing breach of this

20  agreement by defendant, should the USAO choose to pursue any charge

21  that was either dismissed or not filed as a result of this agreement,

22  then:

23  a.   Defendant agrees that any applicable statute of

24  limitations is tolled between the date of defendant's signing of this

25  agreement and the filing commencing any such action.

26  b.   Defendant waives and gives up all defenses based on

27  the statute of limitations, any claim of pre-indictment delay, or any

28  speedy trial claim with respect to any such action, except to the

extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

28. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to

1  maintain its view that the calculations in paragraph 16 are

2  consistent with the facts of this case.  While this paragraph permits

3  both the USAO and defendant to submit full and complete factual

4  information to the United States Probation and Pretrial Services

5  Office and the Court, even if that factual information may be viewed

6  as inconsistent with the facts agreed to in this agreement, this

7  paragraph does not affect defendant's and the USAO's obligations not

8  to contest the facts agreed to in this agreement.

9      30.  Defendant understands that even if the Court ignores any

10 sentencing recommendation, finds facts or reaches conclusions

11 different from those agreed to, and/or imposes any sentence up to the

12 maximum established by statute, defendant cannot, for that reason,

13 withdraw defendant's guilty pleas, and defendant will remain bound to

14 fulfill all defendant's obligations under this agreement.  Defendant

15 understands that no one -- not the prosecutor, defendant's attorney,

16 or the Court -- can make a binding prediction or promise regarding

17 the sentence defendant will receive, except that it will be within

18 the statutory maximum.

19                       NO ADDITIONAL AGREEMENTS

20     31.  Defendant understands that, except as set forth herein,

21 there are no promises, understandings, or agreements between the USAO

22 and defendant or defendant's attorney, and that no additional

23 promise, understanding, or agreement may be entered into unless in a

24 writing signed by all parties or on the record in court.

25          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

26     32.  The parties agree that this agreement will be considered

27 //

28 //

                                20

1   part of the record of defendant's guilty plea hearing as if the

2   entire agreement had been read into the record of the proceeding.

3   AGREED AND ACCEPTED

4   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
5   CALIFORNIA

6   STEPHANIE S. CHRISTENSEN
    Acting United States Attorney

7

8   _____          **September 14, 2022**

9   ALEXANDER B. SCHWAB                         Date
    Assistant United States Attorney

10  _____

11  JOHN A. SANTILLI JR.                        9|9|2022
    Defendant                                   Date

12

13  _____          9/9/22

14  MICHAEL FREEDMAN                            Date
    Attorney for Defendant
    JOHN A. SANTILLI JR.

15

16                    CERTIFICATION OF DEFENDANT

17       I have read this agreement in its entirety.  I have had enough

18  time to review and consider this agreement, and I have carefully and

19  thoroughly discussed every part of it with my attorney.  I understand

20  the terms of this agreement, and I voluntarily agree to those terms.

21  I have discussed the evidence with my attorney, and my attorney has

22  advised me of my rights, of possible pretrial motions that might be

23  filed, of possible defenses that might be asserted either prior to or

24  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

25  of relevant Sentencing Guidelines provisions, and of the consequences

26  of entering into this agreement.  No promises, inducements, or

27  representations of any kind have been made to me other than those

28  contained in this agreement.  No one has threatened or forced me in

                                    21

1    any way to enter into this agreement.  I am satisfied with the

2    representation of my attorney in this matter, and I am pleading

3    guilty because I am guilty of the charges and wish to take advantage

4    of the promises set forth in this agreement, and not for any other

5    reason.

6

7    _____    9/9/2022

      JOHN A. SANTILLI JR.            Date

8    Defendant

9                CERTIFICATION OF DEFENDANT'S ATTORNEY

10       I am JOHN A. SANTILLI JR.'s attorney.  I have carefully and

11   thoroughly discussed every part of this agreement with my client.

12   Further, I have fully advised my client of his rights, of possible

13   pretrial motions that might be filed, of possible defenses that might

14   be asserted either prior to or at trial, of the sentencing factors

15   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

16   provisions, and of the consequences of entering into this agreement.

17   To my knowledge: no promises, inducements, or representations of any

18   kind have been made to my client other than those contained in this

19   agreement; no one has threatened or forced my client in any way to

20   enter into this agreement; my client's decision to enter into this

21   agreement is informed and voluntary; and the factual basis set forth

22   in this agreement is sufficient to support my client's entry of

23   guilty plea pursuant to this agreement.

24   _____    9/9/22

25   MICHAEL FREEMAN              Date

    Attorney for Defendant

26   JOHN A. SANTILLI JR.

27

28