MICHAEL G. FREEDMAN (Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: Michael@thefreedmanfirm.com

Attorney for Defendant
JOHN A. SANTILLI, JR.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN A. SANTILLI, JR., <br><br> Defendant. | Case No. 21-CR-155-FMO <br><br> **DEFENDANT JOHN A. SANTILLI'S SUPPLEMENTAL SENTENCING POSITION** <br><br> Hearing Date: June 6, 2024 <br> Hearing Time: 11:00 a.m. |

John A. Santilli, Jr., by and through his attorney of record, hereby files his supplemental position regarding sentencing. This position is based upon the following memorandum, his initial memorandum and accompanying letters, the presentence report prepared by the United States Probation Office, the documents and records on file in this matter, and any argument or evidence presented at the hearing on this matter or which the Court may wish to consider.

                                                                Respectfully submitted,

DATED: May 27, 2024         By    */s/ Michael G. Freedman*_____
                                                              MICHAEL G. FREEDMAN
                                                              Attorney for Defendant
                                                              JOHN A. SANTILLI JR.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

Since Mr. Santilli filed his initial sentencing memorandum on October 2, 2023, he was convicted in Rhode Island for conduct related to a production similar to that for which he faces sentencing before this Court. The details previously explained in his sentencing memorandum apply equally to the conduct in Rhode Island—his conduct was out of character during a period of his life when he got in over his head and succumbed to his own gambling addiction. Far from requiring more severe punishment in this case, as the government suggests, the Rhode Island case should not change the numerous strong reasons articulated initially as to why the Court should exercise its mercy and discretion in fashioning a fair sentence, namely, a non-custodial sentence of time-served, probation, or house arrest. Indeed, the fact that Mr. Santilli has now served time in custody and faced harrowing medical threats to his life confirms that he has been punished and deterred and that any further time in custody would pose a severe threat to his life and would be more than necessary in this case. Furthermore, Mr. Santilli's initial arguments are confirmed by the fact he has completed his home confinement term in Rhode Island without incident, just as he has been on release in this case for three years without incident. And, as before, Mr. Santilli has demonstrated his determination to ensure that this past conduct remains an aberration, taking numerous further classes to better himself, including while in custody, and has continued to work as a valued employee on numerous projects to support his family.

## II.    Argument

### 1.    Mr. Santilli's Criminal History Category Should Still Be I

The government makes much of Mr. Santilli's Rhode Island case, but nonetheless concedes that it does not affect the government's criminal history calculation. As Mr. Santilli previously argued, the PSR overstates his criminal history. First, he should not be assessed a point based on a single 10-year-old misdemeanor

offense for reckless driving, which only counts under the Guidelines because the sentence imposed was for 36 months' probation.  Second, as the government now concedes, the recent amendments to the Sentencing Guidelines mean that Mr. Santilli no longer receives two criminal history points for committing his fraud offenses "while under any criminal justice sentence." USSG § 4A1.1(d).  Thus, by the proper calculations explained in Mr. Santilli's initial sentencing memorandum, he should have had zero criminal history points before his Rhode Island conviction, so should remain in Category I even after the application of one criminal history point for that conviction.

### 2. Mr. Santilli Should Still Qualify as a Zero-Point Offender

Additionally, Mr. Santilli also respectfully urges the Court to still apply the two-level reduction under the zero-point offender amendment for the reasons previously stated and notwithstanding the Rhode Island conviction.  To increase Mr. Santilli's criminal history category or to deprive him of the zero-point offender reduction would be to unfairly punish him for an unfortunate scheduling issue that prevented him from being sentenced in this case before his conviction in Rhode Island.  Specifically, Mr. Santilli sought several continuances of his sentencing hearing due in large part to his daughter's medical situation.  On June 21, 2023, he sought a continuance to September 21, 2023. (Dkt. 58).  The Court approved that request, but continued the sentencing to a later date, October 12, 2023. (Dkt. 59).  Had Mr. Santilli been sentenced on September 21, 2023, there would have been no effect from the Rhode Island case, and Mr. Santilli should not be sentenced more harshly based on this scheduling issue.

### 3. The Rhode Island Case Does Not Warrant Further Punishment

Finally, the Court should not credit the government's attempt to portray Mr. Santilli as somehow worse of an offender because of this new case.  First, contrary to the government's characterization of the Rhode Island case, that case only involved one victim.  Second, that case, while regrettable, does not represent an entirely different set of conduct as the government claims.  Rather, as Mr. Santilli noted in his letter to

the Court and in his initial memo, his work on the Tales from the Crypt project at issue in that case was closely related to his conduct in this case. It similarly involved a misguided venture with his cousin, Johnny Ryan, in which Mr. Santilli tried to do right by his investor but unfortunately succumbed to his gambling addiction. The Rhode Island conviction is thus closely intertwined with his conduct in this case, for which he has taken responsibility. It must also be understood in the context of the struggles he faced at the time but admirably has now overcome and put behind him.

Far from justifying further punishment, the Rhode Island case underscores the points Mr. Santilli made in his initial memorandum. Indeed, those points and his request for leniency are all the more important now that he has already faced punishment in Rhode Island. The effects Mr. Santilli warned of initially if he is incarcerated have now unfortunately been confirmed. His time in custody had profoundly negative impacts on his health and on his family. For those reasons, Mr. Santilli has now already been punished and the need for further deterrence is lessened given the impact that time in custody had on him and his family.

**4.     The Sophisticated Means Enhancement Should Not Apply**

With respect to sophisticated means, the government's response misses the point. Contrary to the government's flawed analogy to offshore accounts, which are inherently irregular and suspicious, the corporate entities at issue here were routine companies formed by established entertainment attorneys and well-documented in the underlying contracts. Their very nature precludes a finding that Mr. Santilli used them for the purpose of hiding his transactions. The government also suggests that Mr. Santilli's conduct was sophisticated based on the "totality of the scheme" because it victimized multiple experienced investors. But again, Mr. Santilli did not create the corporate documents provided to these investors. Furthermore, he did not speak to any of the investors except for Mr. Lee before the closing. In sum, and contrary to the examples cited by the government, Mr. Santilli did not create the corporate entities in

question, did not use them in a manner designed to conceal, and his conduct was not sophisticated in any particular manner or in totality.

### 5. The Victim Enhancement Should Not Apply

With respect to the number of the victims, the government concedes that "some of the victims pooled their investments through corporate vehicles" and then posits without any evidentiary support that Mr. Santilli must have been aware of this. But there is no evidence of this knowledge on Mr. Santilli's part.

### 6. The Government's Restitution Figure Is Overstated

With respect to restitution, the amount of restitution the government seeks is grossly overstated and should be reduced by at least $1,875,000, the amount that the production received. Notably, the restitution figure the government seeks from Mr. Santilli also falls solely on him because he is the partner who took full responsibility.

### 7. The Government's Attack on Mr. Santilli's Health Is Incorrect

The remainder of the government's sentencing position consists of an unfair and inaccurate attempt to use against Mr. Santilli the life-threatening medical conditions he faced in custody. Based solely on a single transcript and without any medical evidence, the government cruelly accuses Mr. Santilli of deception in the midst of a medical emergency. While in custody, as a result of his diabetes, Mr. Santilli was hospitalized numerous times and denied hospital visits on other occasions, lost consciousness several times, and on other occasions was placed in either segregation or the psychiatric ward in lieu of proper medical care. Not surprisingly, he has not been the only inmate to suffer such treatment in the Rhode Island jail, as confirmed by a recent demand by the ACLU and other organizations for an investigation into the jails following the deaths of four inmates in three months. (*See* https://www.riaclu.org/en/news/nine-organizations-call-independent-investigation-after-recent-deaths-state-prison)

The government assumes that Mr. Santilli has Type II diabetes, the most common form of diabetes, but Mr. Santilli has the rarer Type I diabetes. Contrary to

the government's misinformed allegations, Type I diabetics are both hypoglycemic and hyperglycemic. Mr. Santilli's attached continuous glucose monitor records make clear that his blood sugar is frequently both low and high. The government also misunderstands the Rhode Island records in claiming that Mr. Santilli refused insulin. In fact, it was other medication such as an asthma inhaler and allergy medication that he did not take. Nor is there any evidence to support the government's claim that Mr. Santilli took a year's worth of glucose tablets in ten days. At most, he was given one month's supply. And the reason he needed so many was because he suffered severe lows after the jail nurse accidentally gave him too much insulin, which could have killed him. The government also attacks Mr. Santilli's attempts to maintain his blood sugar with the limited options available in custody. In fact, Mr. Santilli knows well the dangers he faces and did his best to control his blood glucose however he could. Additionally, his commissary purchases were not only for himself, but also for his cellmate and for bartering for phone time so that he could call his wife and children.

Far from demonstrating deception, this harrowing experience offers a stark example of the continued risk Mr. Santilli will face with any further time in custody. The concerns he articulated in his initial sentencing memorandum have now been demonstrated, including to him. The Court should be assured that he has been severely punished and deterred since his last sentencing submission and should recognize even more so now that no further time in custody is warranted and would pose grave and undue risk to Mr. Santilli. And, notwithstanding the government's undue focus on the medical issues, Mr. Santilli was approved for a rare spot in the Lifeliner program while in custody to mentor younger inmates and then continued working on two films while serving the rest of his home confinement term.

## IV.   Conclusion

Based on the foregoing, Mr. Santilli again respectfully requests that the Court sentence him to a non-custodial sentence.

| | |
|---|---|
| DATED: May 27, 2024 | Respectfully submitted,<br><br>By   */s/ Michael G. Freedman*<br>MICHAEL G. FREEDMAN<br>Attorney for Defendant<br>JOHN A. SANTILLI |

6